JAMES E. CAMPION *vs.* ELLEN E. MARSTON, Admx.

Kennebec.    Opinion December 23, 1904.

*Contract.    Sale.    Warranty.    Evidence.    Merchantable Ice.    Waiver.*

1.  Good faith, bona fides, is an element in every contract even though not expressed in terms.

2.  A contract for the sale of ice for the market includes an assurance or warranty, that the ice is of merchantable quality, unless otherwise stipulated.

3.  An acceptance of ice delivered under such contract of sale even after inspection may be evidence of the release or waiver of such warranty, but does not of itself necessarily constitute such release or waiver.

4.  Given circumstances may have more weight upon a question of waiver of non-essentials, than upon a question of waiver of essentials in a contract.

5.  In this case there was testimony, which if true warranted the verdict. It is not made clear that it was untrue, hence the verdict must stand.

On motion and exceptions by plaintiff.    Overruled.

Action for money had and received, brought under the statute to prosecute an appeal from the report of commissioners appointed by the Judge of Probate for the County of Kennebec, to pass upon the plaintiff's claim.    (R. S. 1883, c. 64, § 53.)

The commissioners returned an award for the plaintiff for the sum of $303.70.    The plaintiff then appealed.    The action was then tried in the court below and the plaintiff obtained a verdict for $260.94. The plaintiff asks to have this verdict set aside on both motion and exceptions.

The case is stated in the opinion.

*Charles P. Mattocks and Heath & Andrews,* for plaintiff.
*L. C. Cornish and N. L. Bassett,* for defendant.

SITTING:  WISWELL, C. J., EMERY, SAVAGE, PEABODY, SPEAR, JJ.

EMERY, J.    In the spring of 1890 Mr. Campion, the plaintiff, was the owner of a stack of ice at Sebago Lake, measuring about 1400 tons.    Messrs. Jones & Marston were a firm of brokers and dealers

in ice having their office at Hallowell. On May 24, 1900, presum-· ably after some prior conversation or correspondence, Mr. Marston for the firm wrote to the plaintiff as follows: "The ice you have we can give $3.75 for F. O. B. for June, July Shipment;— will take it as soon as we can. The ice to be weighed on the wharf by a sworn weigher." This offer was practically accepted. It was mutually understood that the price $3.75 was the price per ton, that the place of delivery was on board ship at Portland, and that the vessels were to be furnished by Jones & Marston, the purchasers. Nothing appears to have been said or written by either party about the quality of ice whether merchantable or not; nor does it appear that Jones & Marston inspected the ice before purchasing, though so far as appears they could have done so.

Under this contract of sale, the plaintiff delivered the ice on board ship at Portland to the amount of 1390 tons by weight, and Mr. Jones & Marston accepted it and carried it away to market. It was weighed by a sworn weigher as it went on board. The plaintiff now seeks to recover the full contract price of $3.75 per ton for the whole 1390 tons. The defendant claims a reduction in price on the ground that much of the ice was not merchantable when delivered. The pivotal question of law is whether this defense is admissible. Two subsidiary questions are presented by the exceptions, viz : (1) whether the contract of sale of the ice included by implication an assurance or warranty that the ice was merchantable;—(2) whether the acceptance of the ice at the place of delivery on board ship constituted a satisfaction, or waiver, of such warranty.

Ice of a certain degree of purity and hardness is a merchantable commodity and as such has a quotable market price. If of less than that degree of purity and hardness, it has no quotable market price and is not merchantable, is not sure of a sale. Ice is not graded like grain or cotton, each grade having its own market and price. If not merchantable its sale at any price is uncertain. Indeed the term "ice" in the trade means "merchantable ice." Hence, whenever a contract of sale of ice is made it is a contract of sale of merchantable ice unless otherwise stipulated. The purchaser becomes entitled to receive merchantable ice. Good faith requires the seller to furnish it. Good

·faith, bona fides, should be as' much an essential part of a contract now as it was in the time of Justinian.

Ice is homogeneous. · A particular lot of ice has no individuality like a domestic animal, a building, a parcel of real estate, a factory, a machine or plant, or any other specific individual article where the purchaser ordinarily has a choice and makes an examination and selection. Of course if the purchaser of ice does in fact examine the ice before purchasing, and buys upon his own judgment, he may perhaps come under the rule of caveat emptor but this purchaser is not shown to have done so. The plaintiff was offered and accepted what is conceded to have been the price for merchantable ice. In law, as well as in morals and honor, he must be held to have promised that his ice to be delivered was of that quality.

Messrs. Jones & Marston received the ice into their vessels at Portland as delivered. While being taken from the cars, weighed and put on board ship, it was open to view and inspection, and was seen by their agents. These circumstances may be evidence, and even strong evidence, that they accepted the ice as the ice bargained for and in full satisfaction of the contract of sale including all that good faith demanded of the plaintiff; but the circumstances do not in themselves constitute, as matter of law, an acceptance in satisfaction or waiver of the plaintiff's promise that the ice was merchantable. Jones & Marston were not obliged to decide the matter then. They could lawfully have refused to receive the ice if not merchantable; or they could have taken it, leaving the question of rebate for unmerchantable ice to be determined afterward. It does not necessarily follow from their acceptance of the ice that they released the plaintiff from his promise or obligation that the ice was merchantable. Whether they did in fact take the ice as full satisfaction of the contract of sale, and thus release the plaintiff from that obligation, was a question of fact for the jury.

We think the foregoing propositions are correct and well founded in reason and authority. See *Warner* v. *Arctic Ice Co.*, 74 Maine, 475, and *Morse* v. *Moore*, 83 Maine, 473, where the subject matter and the authorities, including those cited by the plaintiff here, are fully considered. We think the above Maine cases are decisive of

the principle for this state, whatever the law of New York or other states.

We think this conclusion overrules all the plaintiff's contentions except one. He urges that the presiding justice by his qualification of a requested instruction weakened its force to his legal detriment, and deprived him of the proper full force of the facts assumed as evidence of waiver. His request was as follows:

"Seventh. That if they find that Jones & Marston had an opportunity to inspect the ice when loaded on the vessels or that Jones & Marston employed an inspector to examine the ice when loaded and such inspector did so examine it, such facts would be evidence tending to show a waiver of the implied warranty. Whether the proven facts constitute a waiver is for the jury. (Requested after giving of charge, without prejudice to requests refused)."

The presiding justice said (repeating the request).

"I give you that with certain qualifications, gentlemen. If Jones & Marston had such opportunity to inspect the ice as would afford them knowledge of its condition, or if through an inspector they inspected it, then that would be evidence tending to show a waiver on their part, but it does not necessarily prove a waiver of the full performance of the contract; inspection, knowledge particularly, is strong evidence of a waiver of exact compliance with the terms of the contract; it is not such strong evidence of a waiver of essential performance, but its force and weight is for you. A party when he has bought goods and comes to receive them, has a right to waive performance on the part of the other party, and if he does waive it he cannot afterwards call for the performance of it, but whether he does or not is a question of fact for you to determine from all the circumstances in the case bearing upon the surroundings, and his conduct, and opportunities and knowledge of the time."

The whole instruction is within the propositions laid down. The jury were distinctly instructed that the facts assumed were evidence of a waiver, but did not necessarily prove a waiver of full performance, that they were strong evidence of a waiver of exact compliance with the terms of the contract, but not so strong evidence of a waiver

of essentials in the contract. We think it evident that from given facts a waiver of non-essentials is more easily and safely inferred than is a waiver of essentials. Moreover the jury were further explicitly told that the force and weight of the facts (in other words the inference to be drawn from the facts) were for them. We cannot see in the instruction any prejudice to any legal right of the plaintiff.

As to the motion:—A study of the evidence discloses considerable conflict of testimony. There were numerous circumstances testified to from which different inferences might be drawn by different men. There was certainly testimony which if true was sufficient to prove that the ice was far from merchantable. The plaintiff earnestly contends that this testimony was untrue and even manifestly so. This is not so clear to us as to him and his counsel. Two commissioners have heard the case and found against the plaintiff. Upon his appeal to a jury that tribunal has also found against him. Whatever doubts he may have raised in our minds, he has not demonstrated to us that the commissioners and jury were undoubtedly wrong. Hence his motion must be overruled.

*Exceptions and motion overruled.*